[960.]

# WELLS, FARGO & CO., APPELLANT, *v.* ADAM WELTER ET AL., RESPONDENTS.

AGENTS OF WELLS, FARGO & CO., STOCKBROKERS—PURCHASER OF STOCK, DEALING WITH STOCKBROKER AS AGENT OF W., F. & CO.—PROMISSORY NOTE—TRANSACTION CONSTRUED AS A CONTRACT, NOT A LOAN.—Rice & Peters were stockbrokers, R. was also agent, and P. cashier of the express and banking business of Wells, Fargo & Co., in Carson. Welter called at the banking department and asked R. how much interest W., F. & Co. would charge to buy, for him, fifty shares of Ophir stock. The interest was agreed upon, and R. agreed to order the stock that day. The stock was ordered by R. & P., through their brokers in San Francisco. The next day, W., at R.'s request, executed his note to W., F. & Co, for the amount of money it took to purchase the stock. R. stated that any name besides W.'s would be sufficient, as W. and the stock would be ample security for the amount due. This note, and another executed in its place, were taken up, and replaced by the note sued upon. W. was credited upon the books of R. & P. with the stock and the amount of money stated in the note. R. & P. received credit with W., F. & Co. for the same amount as so much money deposited. W. never received any money or stock. R. &. P. failed. W., F. & Co. brought suit against W. upon the note. The question was, whether the transaction was only a loan, as claimed by W,. F. & Co., or a contract to procure the stock, as claimed by W. The jury found a general verdict in favor of W., and there were forty-eight special findings. *Held,* upon a review of the testimony, that the evidence and special findings sustained the verdict.

IDEM—INSTRUCTIONS.—*Held,* upon a review of the instructions, that if, from all the circumstances, W., as a reasonable man, believed, and from the conduct of R., as agent of W., F. & Co., was justified in believing, that he was dealing with W., F. & Co., through their agent; and if R. knew, or ought to have known, that W. so believed; and that as a reasonable man he was justified in such belief, and that he gave the note with that understanding; then if R. did not undeceive him, but permitted him to execute the note in such belief, it was the duty of the jury to find a verdict in favor of W.

APPEAL from the District Court of the Second Judicial District, Ormsby County.

The instructions asked by plaintiff, and refused by the court, referred to in the opinion, read as follows: 1. "The jury are instructed, that if the defendant Welter, or John Wagner, acting as the lawful agent, in the transaction for Welter, had notice, before the giving of the note sued on,

that the stock mentioned in defendants' answers had been purchased by Rice & Peters, on account of defendant Welter, and that the note in question was then given, after having such notice, the plaintiff is entitled to recover in this action the full amount of the note, principal and interest." 2. "The jury are instructed, that if the purchase of the stock was made one day, and that nothing was said concerning any note between the parties, and that the note made in October, 1876, was made on another and different day, and that nothing was then said about the stock, the jury are instructed that the two contracts are separate and independent, and Wells, Fargo & Co. are entitled to recover in this action." The other facts sufficiently appear in the opinion.

*A. C. Ellis,* for Appellant:

I. The testimony and findings show, that the defendant Welter knew, or had opportunity to know, at the time he signed the note sued on, that the stock had been purchased by Rice & Peters, for his account, the price paid, the commission charged, and the expenses, and that Rice & Peters, with whom he had personally dealt, acted solely as stock brokers in the transaction.

II. It was Welter's duty, imposed upon him by the law, to inform himself of the scope of the authority of Rice, as the agent of Wells, Fargo & Co., which he failed to do; and in this transaction, if Rice, as such agent, exceeded his authority and made the contract as claimed by the defendants, which we deny, then the plaintiff is not bound by such contract. (Story on Agency, secs. 115, 172, 436; *Silliman* v. *Fredericksburg R. R.*, 27 Gratt. 120; *Dosier* v. *Williams*, 47 Miss. 647; *Rawson* v. *Curtiss*, 19 Ill. 456; *Fisher* v. *Campbell*, 9 Port. (Ala.) 210; *Reitz* v. *Martin*, 12 Ind. 306; *Berry* v. *Anderson*, 22 Id. 36; *Lee* v. *Monroe*, 7 Cranch, 366; *State* v. *Haskell*, 20 Iowa, 276.)

III. The findings are sufficient to support plaintiff's motion for judgment on the findings.

IV. The judgment must be reversed. Inconsistent findings will not support a judgment. (*Smith* v. *Cushing*, 41

Cal. 97; *Hidden* v. *Jordon*, 28 Id. 301; *Lucas* v. *San Francisco*, 28 Id. 591; *Leese* v. *Clark*, 20 Id. 387; *N. P. Railroad* v. *Reynolds*, 50 Id. 90; *Bosquett* v. *Crane*, 51 Id. 505.)

The plaintiff should prevail upon the findings and the pleadings, because its case is clearly made out when it shows its written contract, the note ratified as often as the note was renewed. And the most favorable view of respondents' version of the alleged contract is doubtful, for the jury find that Rice never understood that the plaintiff was to buy the stock, and that defendant Welter did so understand. Of this the defendants have the affirmative, and in a doubtful matter the negative is to "be understood rather than the affirmative." (Bouvier's Dict., "Maxims," 131.)

*R. M. Clarke*, for Respondents. No brief on file.

By the Court, LEONARD, J.:

Plaintiff is a corporation, organized for the purpose of carrying on banking and express business in this and other states, and this action is upon a promissory note, executed and delivered to it by the defendants. The grounds of defense—an entire failure of consideration—are stated as follows in the answer: "The said promissory note was given in consideration of fifty shares of Ophir mining stock, which the said plaintiff agreed to purchase for, and deliver to, the defendant, Adam Welter, and for no other consideration whatever; and the defendants say, that the plaintiff did not purchase said mining stock or any part thereof for said defendant, Adam Welter, nor did the said plaintiff deliver said stock or any part thereof to the said Adam Welter, but refused and still refuses to do so." Under the court's direction, the jury found upon forty-five special issues or questions of fact, and the general verdict was for the defendants.

Upon the coming in of the general verdict and special findings, plaintiff moved the court for judgment upon the pleadings and the special findings, notwithstanding the general verdict, upon the grounds that the special findings, in conjunction with the pleadings, warranted and required judgment for the plaintiff for the full amount claimed in the

complaint. The motion was denied and the defendants had judgment for their costs. Plaintiff appeals from the court's order denying a new trial, and from the judgment.

The record shows that H. F. Rice, at the date of the transaction (October 11 and 12, 1876), as for a long time before, and some months thereafter, was plaintiff's general agent at Carson, where the contract was entered into. He had control of both departments of plaintiff's business at that place. H. J. Peters was plaintiff's cashier. Before, and during the month of October, 1876, and as claimed, until April, 1877, Rice & Peters were partners in the business of stockbrokers in Carson, their office having been in a different building, and some distance from plaintiff's. They had a clerk who bought and sold stocks for customers, but the business was conducted according to their instructions. In October, 1876, and before and after, plaintiff loaned money and did a general banking business in its banking department at Carson, and purchased stocks upon commission, through its express department, for customers, when ordered to do so. When stocks or other things were so purchased, its custom was to require a deposit for cost and charges. Stocks were purchased through brokers. There was nothing to prevent ordering through brokers in Carson instead of those residing in San Francisco, except that in so doing two commissions had to be paid instead of one. Mr. Tickner, plaintiff's agent at the time of the trial, testified, that "Wells, Fargo & Co. would not execute an express commission to purchase mining stocks without the money being paid in advance; that their rules would not allow them to do so." But he also stated, that "the express department was allowed to purchase anything, the cost price being advanced, and the charges, unless a man was known to be good;" that "if Welter had taken the exact price of fifty shares of Ophir stock to Rice, through the express department, and requested him to buy it, there would have been nothing wrong in his business."

It is plain from all the evidence, that plaintiff was willing and anxious to furnish the money, either as a loan proper to Welter, to be used by him in the purchase of the desired

stocks, or by plaintiff, in procuring it. The only real contest, upon the facts, was as to the contract. Plaintiff claimed that the transaction was a mere loan, while the defendants insisted that it was in no sense a loan, but an arrangement whereby plaintiff agreed to procure the stock, which was never done, and that Welter did not in any manner receive any portion of the money mentioned in the note. That Rice, as plaintiff's agent, had power to loan or furnish the money upon such terms as were satisfactory, was not disputed; that he could have ordered the stock through brokers, had the cost price been advanced, is admitted; and that he might have ordered it without an advance, if the party was "good," seems to be true. Such being the case, he undoubtedly had *power* to do all that the defendants assert that he did do. He was the general agent of both departments, and had control of all the plaintiff's business at Carson. He had the ability to call both departments to his aid. If he had power to loan the money, hand it over to Welter, and immediately thereafter receive it back again, in the express department, as an advance upon a commission to purchase, he certainly could make a contract to procure the stock, without the useless ceremony of paying over the money and receiving it back again—a contract which, within its scope, combined a legitimate use of both departments. We shall, therefore, dismiss the question of Rice's power to enter into the contract set up by the defendants.

The important issue for the jury's consideration was, whether the transaction was only a loan, as claimed by plaintiff, or a contract to procure the stock as alleged by the defendants. It was a question of much consequence, also, whether the giving of the note by Welter, after receiving notice of the purchase of the stock by Rice & Peters, stockbrokers, fixed his liability upon the note, notwithstanding the contract was as claimed by him.

That plaintiff advanced to Rice & Peters the money for which the note was given, admits of no doubt, and that Welter never received the stock or the money, or any part of either, is equally true. The jury must have based their

general verdict upon the conclusions that the contract was as alleged by defendants; that an agreement to procure the stock was the consideration of the note first executed; that the note set out in the complaint was simply a renewal of the first, and that plaintiff had wholly failed to perform the contract, which alone induced its execution. It becomes necessary to ascertain whether the verdict and the material special findings are sustained by the evidence, and whether the latter are consistent with the former. We can not doubt that the verdict would have been sustained by the evidence, had there been no special findings. Wagner and defendant Welter both testified that they went to plaintiff's office to see Rice, to get plaintiff to purchase for Welter fifty shares of Ophir mining stock, and to ascertain what rate of interest plaintiff would charge for the purchase; that they did not borrow the money, but that they asked Rice how much interest Wells, Fargo & Co. would charge Welter for buying the stock mentioned, and that one and one half per cent. was agreed upon; that they did not contract for money; that Welter was to receive no money, but was to get fifty shares of Ophir stock. Rice agreed to order the stock that day, and it was accordingly purchased, as hereinafter stated, by Rice & Peters, stockbrokers. On the following morning (October 12) Wagner went again to plaintiff's office, and Rice there handed him a promissory note, payable to plaintiff, for two thousand two hundred and twenty-three dollars and fifty cents, with interest at one and one half per cent. per month, and asked him to go to Empire, a few miles from Carson, and get Welter to sign it. Wagner asked Rice if he (Wagner) should sign it also. Rice told him he need not do so; that any name besides Welter's would be sufficient, as Welter and the stock would be ample security for the amount due.

Wagner took the note to Welter, together with the following memorandum of purchase:

"Rice & Peters, stockbrokers, Carson City, 12 Oct., 1876. Purchased for account of Mr. A. Welter, 50 Ophir, 44, $2,200; com. and tel., $23.50; $2,223.50."

Welter could not read English, and did not then, nor un-

til six or eight months thereafter, know the names of Rice & Peters were on the memorandum or notice. Wagner told Welter what the stock cost, the amount of the commission and telegraphing, and also that Rice said he need not get any security upon the note; that Welter and the stock were sufficient. Welter then signed the note, and Wagner took it back to plaintiff's office and gave it to Rice. Wagner was acting for both parties. The note first given was due in ninety days. At its maturity another was executed in its place, and when that became due it was replaced by the one in suit, with the name of defendant Klein added as additional security, for the reason, as stated by Welter, that the stock at that time had greatly depreciated in value. The stock was never in the hands of either Rice & Peters, plaintiff, or Welter. It was ordered by the agent of Rice & Peters, for them and in their firm name, through Cope, Uhler & Co., brokers in San Francisco, who telegraphed Rice & Peters of its purchase for them. Thereupon Rice & Peters credited Welter upon their books with the stock and the amount of money stated in the note, and received credit with plaintiff, for the same amount, as so much money deposited.

It did not appear from plaintiff's books that the stock was held as collateral to secure the note or otherwise.

Conceding that Welter received notice, before executing the note, that Rice & Peters had purchased the stock, as stated in the paper before set out, still there is no proof that he knew, or ought to have known, that they did not receive the certificate and deliver it to plaintiff as collateral. On the contrary, Welter testified that he always supposed plaintiff had the stock until some time after the failure of Rice & Peters, when he offered the amount of the note to plaintiff and demanded the stock.

That Rice, as plaintiff's agent, agreed to purchase the stock for Welter, and that its delivery, or the contract to deliver, was the consideration that induced the execution of the note, admits of no doubt, if Wagner and Welter testified to the truth. And, besides the testimony of witnesses, the conclusion that Rice was acting for plaintiff, and that Wel-

ter had good reason so to believe, is greatly supported by
several facts. He was certainly acting for plaintiff in agree-
ing to advance the money, and in arranging the rate of
interest; and in the same connection, at the same time and
place, in plaintiff's office, with Rice behind the counter and
Wagner and Welter in front, the agreement to purchase the
stock was made. Not until the stock had been ordered
was the note presented to Welter for his signature, and
with the note was sent the evidence of its purchase. It was
never intended that plaintiff should pass any money to
Welter; still, Rice sent for and received his note, and at
the same time informed him that the stock would be held
as security. In so doing he must have been acting for
plaintiff, and it would have been strange, under the circum-
stances, if the jury had found that, in agreeing to furnish
the money, in fixing the rate of interest, in getting the note
and informing Welter that the stock would be held as col-
lateral, he was acting for plaintiff, but that in stipulating
to purchase the stock he was acting for Rice & Peters. If
the procuration of the stock for Welter was the considera-
tion of the note, and if it was to be held as collateral, it
was plaintiff's duty to obtain a certificate and hold it, or
get Welter's consent to let it remain as it was; and if
plaintiff did not do so, the subsequent solvency of Rice &
Peters, and their ability to produce the stock when wanted,
was a subject for plaintiff's consideration only. After re-
ceiving the notice that the stock would be held as security,
Welter had no right to think it was subject to his order at
Rice & Peters', nor does it appear that it was so, except
upon payment of the note to plaintiff, and then it would
have been plaintiff's duty to deliver the stock so held.
Welter testified that he never thought Rice & Peters were
solvent, and therefore never left stock with them. Plaintiff
or its agent had no right to mislead Welter and then ask
him to bear the burden resulting from its own laches.

We are not required to decide what the rights of the
respective parties would have been if Welter had not
been informed that the stock would be held as before
stated. Under such circumstances, it is possible that,

after receiving notice of its purchase by Rice & Peters, Welter's duty would have been to demand it of them, or at least of plaintiff, and that, had they failed before he did so, the loss would have been his. It may be in that case the law would have said that Welter was in fault, and that plaintiff had done its whole duty under the contract. But whether that be so or not, Welter can not now be held in fault because he did not demand the stock, so long as plaintiff gave him time for payment. It is true, the proof shows, and the jury find, that plaintiff did not have the stock as collateral, but the failure to do so was its own fault, and Welter was deceived. Plaintiff could have protected itself, and ought to have done so. The general verdict is sustained by the evidence.

Does it also sustain the material special findings, and are they consistent with the verdict, or did the court err in denying plaintiff's motion for judgment thereon, notwithstanding the verdict for defendants?

We shall not undertake to examine the many special findings in detail, but those most favorable to plaintiff's claim of inconsistency with the general verdict will be considered. And as affecting this question, it is proper to state that, we regard the agreement at the bank, on the eleventh; sending the note to Welter for his signature with the information that the stock had been purchased by Rice & Peters, and that it would be held by plaintiff as security for the payment of the note, on the twelfth; the execution of the note by Welter and its return to plaintiff's bank on the same day, as different parts of one transaction.

The jury found, (14) that Welter understood from the transaction, that plaintiff was to buy or procure for him fifty shares of Ophir mining stock, and that he made the note of October 12, upon the faith of that understanding.

They also found, (15) that plaintiff or its agents understood that Wells, Fargo & Co. was to buy or procure the stock for Welter; that it made the loan and accepted the note upon such understanding; also, (16) that Welter did not understand that Rice & Peters, stock brokers, were to buy and become responsible to him for the stock; and that

(17) Rice, *as member of the firm of Rice & Peters, did understand* that Rice & Peters, stock brokers, were to buy and become responsible to Welter for the stock. A comparison of the fifteenth and seventeenth findings shows that, the jury considered the understanding of Rice both as agent of plaintiff and as a member of the firm of Rice & Peters.

The seventeenth special issue was outside of the case, because it was a matter of no consequence what Rice understood "as a member of the firm of Rice & Peters." The vital question was what he understood, or ought to have understood, as agent of plaintiff. If he made the contract for plaintiff, as its agent, it was neither necessary nor proper to inquire what his understanding was as one of the firm of Rice & Peters; and if he did not so make it, plaintiff was not bound by it, regardless of his understanding as a member of the firm. It was the agreement of minds between Rice, as plaintiff's agent, and Welter, that fixed the liability of the parties to this action. But since that question was asked and answered, we shall accord to the answer its proper consequences.

The jury could not have intended to find that Rice, as plaintiff's agent, understood that plaintiff agreed to buy or procure the stock, and that the note was given and accepted upon that understanding, and also that Rice, as member of the firm of Rice & Peters, understood the contract in a different way. The same person, the one who made the contract, could not have understood it one way as plaintiff's agent, and in another as a member of the firm of Rice & Peters. What, then, is a reasonable construction of the two findings?

As plaintiff's agent, if Welter did not complain, Rice had the right to procure the stock through Rice & Peters, or any other stock brokers. He probably understood that he might purchase it through his own firm; at any rate there was nothing to prohibit him from doing so. As a member of the firm of Rice & Peters, it is fair to presume that he intended to transact the business as it was done; that is to say, order the stock through stock brokers in San Francisco, in the name of Rice & Peters, without getting

any certificate, take credit for the cost with plaintiff, and credit Welter with both the stock and money upon the firm's books.   In that sense, as one of the firm of Rice & Peters, he understood that they were to buy the stock, just as the cashier of the Carson Savings Bank would have understood that that bank was to buy it, if Rice had ordered it there, instead of through Rice & Peters.   Rice knew also, that if Rice & Peters should purchase it in the manner stated, and credit Welter with it upon their books, they would be responsible for it; and had they not failed, they would have been so.   Plaintiff might have paid the note, and then compelled Rice & Peters to deliver it, or respond in damages for its value.   But the facts above mentioned do not relieve plaintiff from liability, if the contract was as claimed by defendants and as found by the jury.   The jury did not find, and from their findings and verdict they could not have believed, that Rice understood, from the transaction, that Welter was dealing with him as one of the firm of Rice & Peters, when the agreement to procure the stock was made.

The jury found that Welter executed the note, after receiving the notice or memorandum, before set out, of the purchase of the stock by Rice & Peters, and from that finding it is argued that, the making of the note after the notice, was an affirmance of the purchase by Rice & Peters, and that the note was executed in payment for the stock so purchased.

But the whole transaction must be considered; that is to say, the agreement entered into on the eleventh; the subsequent purchase; the execution of the note on the twelfth by Welter, after being informed by Wagner upon the authority of Rice, that the stock would be held as collateral to secure plaintiff's note.

It was a matter of no consequence to Welter whether Rice & Peters, or some other brokers, bought the stock.   It was enough for him to know that it had been bought, the price, and that plaintiff was to take and hold it as security.   From the notice given by Wagner, Welter had good reason to suppose that Rice & Peters had obtained a certificate, and that plaintiff had it, or would get and hold it, as col-

lateral. As before stated, he testified that he always supposed plaintiff had it, and that he did not know the stock was placed in his account on Rice & Peters' books.

It was also found by the jury, that Welter did not intend to intrust Wells, Fargo & Co. with a commission, through their express department, to purchase the stock in question, and that Wells, Fargo & Co. did not agree to execute such commission through its express department. The jury meant to say that, by the contract, plaintiff was not limited to any one department, or to any particular way, in getting the stock; that Welter did not order the stock at all, or intrust plaintiff with any commission through any department; but that plaintiff agreed to purchase or procure it as it deemed best, and that such agreement, accompanied with the further understanding, that it would be held by plaintiff as collateral security, was the consideration that induced Welter to execute the first note. Counsel for plaintiff says: "The most favorable view of defendant's version of the alleged contract is doubtful, for the jury find that Rice never understood that plaintiff was to buy the stock, and that defendant, Welter, did so understand." Counsel is in error. We have already adverted to the fifteenth, sixteenth, and seventeenth findings. By the forty-second they found that Rice, by affirmative language used by him on the eleventh of October, agreed with Welter that Wells, Fargo & Co. would purchase fifty shares of Ophir mining stock for and on account of Welter. They found (42) that Rice did not, by any affirmative language, agree *on that day*, that plaintiff would hold the stock as collateral; but they also found (35, 36, 37, 43, and 44), that Wagner told Welter that plaintiff was to take and hold the stock as collateral, to secure the note, and that Wagner was authorized by Rice, as agent of plaintiff, to so state to Welter; and all the evidence shows that the entire understanding in relation to the collateral security was had on the twelfth, before the note was executed. The forty-second question and answer were limited to the understanding arrived at on the eleventh, while the thirty-fifth, thirty-sixth, thirty-seventh, forty-third, and

forty-fourth refer to the understanding of the following day, before the execution of the note.

Complaint is made that the court erred in refusing the plaintiff permission to prove that Rice, as agent, had no authority to purchase mining stocks, or to agree to do so. The record fails to show such refusal. The court did refuse to submit special issues upon that subject, and we think correctly, for the reasons before stated. There was no evidence justifying such submission.

It is urged, also, that plaintiff should have been permitted to prove that Rice & Peters were solvent at the time of the transaction, and that this special issue should have been submitted to the jury as requested, to wit: "Could the defendant Welter, at any time after the purchase of said stock by Rice & Peters upon his account, and after the same had been paid for by Wells, Fargo & Co., have demanded and received the same from Rice & Peters, without further cost or charge to him, and were said Rice & Peters in condition to deliver the same up to the first of April, 1877?"

The record shows no refusal to permit the proof mentioned, nor did plaintiff make, or endeavor to make, such proof, except to the extent found by the jury, that Rice & Peters ordered the stock as before stated, credited Welter with the same, and so held it, subject to his order.

The special issue should not have been submitted to the jury. If they could have found that, Welter might have demanded and received the stock from Rice & Peters, at any time after its purchase (although the only proof of that fact was, that it was purchased in San Francisco and credited to Welter upon the books of Rice & Peters in Carson), still they could not have found that Welter could have received it upon demand, without paying the amount of the note, because there was no evidence of that fact. Nor was there any evidence of the financial condition of Rice & Peters at any time after the stock was purchased. Besides, the ability of Rice & Peters to deliver it, upon demand, was immaterial and irrelevant, if the contract and the consideration of the note were as stated by Wagner and Wel-

ter, and as the jury found, especially in view of the further fact, that the stock was to be held by plaintiff as collateral security for the payment of the note.

It is said that the court erred in allowing Wagner to testify to the conversation had between himself and Welter concerning the transaction, before entering the bank, since plaintiff's agent was not present; but no objection was made to the giving of that testimony at any time.

It is claimed that the four instructions given for the defendants were erroneous, and that the two offered by plaintiff, but refused, should have been given. Defendant's first was given upon plaintiff's theory of the contract, and is to the effect that if Welter borrowed from plaintiff the money for which the note in question was given, and if that money was not paid or credited to him, and if Welter never drew it from the bank, then the jury must find for the defendants, unless Welter gave a written or verbal order to Rice & Peters for the money, or authorized Rice or Peters to draw it from Wells, Fargo & Co., to pay it to Rice & Peters in payment for stock. Upon the facts we see no error in the instruction, but under the circumstances it was certainly harmless, for two reasons:

1. It is evident from the verdict and findings that the jury did not believe the transaction between plaintiff and Welter was a loan simply. They were of the opinion that the consideration of the note was the stock or an agreement to procure it.

2. By finding thirty-first, they found that it was Welter's understanding that the money should be used for the payment of the purchase price of the stock; consequently, had they concluded that the money was borrowed, as claimed, they must have found that Rice was authorized to draw it out or use it in the purchase. The second instruction for defendants is plainly correct. The third is to the effect, that if Welter understood, from all the circumstances, that he was negotiating with plaintiff and with Rice as its agent, for the purchase of the stock, and if Rice did not undeceive him, but permitted him to make the note of October 12, in the belief that plaintiff was to make the pur-

chase; and if Welter gave the note with such understand-
ing, then the jury must find for the defendants, unless they
found that plaintiff did purchase and deliver the stock to
Welter. Counsel does not suggest the point of error in
that or any other instruction given or refused. It may be
said, however, that the one under consideration is not as
full and definite as it should have been, especially if special
findings had not been asked.

If, from all the circumstances, Welter, as a reasonable
man, believed, and from the conduct of Rice, as plaintiff's
agent, was justified in believing that he was dealing with
plaintiff through its agent; and if Rice knew, or ought to
have known, that Welter so believed; that as a reasonable
man he was justified in such belief, and that he gave the
note with that understanding, then if Rice did not undeceive
him, but permitted him to execute the note in such belief,
the jury should have found for the defendants. We deem
it unnecessary, however, to decide whether this instruction
contains, in fact, all the limitations just stated, because if
it does not, the special findings supply every possible
defect.

Welter testified, and the jury found, that he understood
he was negotiating with plaintiff for the purchase of the
stock; that he made the note with such understanding, and
that plaintiff had the same understanding. They found
that Welter asked Rice, agent of plaintiff, how much inter-
est plaintiff would charge for buying the stock, but did not
ask him how much interest plaintiff would charge for the
money to buy it. If those findings were correct, and there
was the positive testimony of two witnesses to support them,
then Rice knew, or ought to have known, that Welter, with
good reason, believed that he was dealing with plaintiff
through its duly authorized agent; and instead of undeceiv-
ing him, if such was not the fact, he not only permitted
him to sign the note in that belief, but strengthened the
grounds of his belief before its execution, by authorizing
Wagner to inform him that plaintiff would hold the stock
as security. In view of the special findings, our opinion is
that plaintiff has no ground of complaint against the

instruction in question. As to defendant's fourth instruction, nothing need be added to our comments and conclusion upon the first.

A review of the two instructions asked by plaintiff and refused by the court, would necessarily require a repetition of much that has been said in considering other assignments of error. The first was erroneous, especially in view of the fact that in connection with the notice that Rice & Peters had purchased the stock, Welter was also informed by Wagner, acting upon the authority of Rice, that plaintiff would hold the stock as collateral security. The second was erroneous, because the execution of the note was not a separate and independent transaction, but was only one act in a series, as before stated.

We find no error in the record, and the judgment and order appealed from are affirmed.

BEATTY, C. J., concurring:

I concur in the conclusions and judgment of the court, but wish to add that, in my opinion, all the exceptions to the rulings of the district judge, touching the question of Rice's authority, are most effectually disposed of by saying, not that any possible error therein was cured by the special findings of fact, but that the rulings were correct.

When it is once settled that Welter never received a dollar of plaintiff's money, or any other consideration for his note, except Rice's promise that plaintiff would purchase stocks to the amount thereof, and hold them as security for the payment of the same, the only material question, is whether that promise was kept. If it was not, Welter is not bound, and that is the end of the case. Whether Rice had or had not authority to bind plaintiff by such an agreement, is of no sort of consequence, unless it should be held that the principal may repudiate the unauthorized promise of his agent, and yet compel the performance of a contract, the only consideration of which was the promise so repudiated.

The extent of Rice's authority may have had some relevancy as an item of evidence bearing upon the question as

to what the agreement with Welter actually was, but if so, that was the whole extent to which it was entitled to consideration, and the district court therefore properly refused to submit it as an issue to the jury, either by instructions or otherwise.

If Rice had no authority from plaintiff to buy stocks and hold them for its customers, it is also true (as found by the jury) that he had no authority from Welter to intrust any money of his to Rice & Peters.

What he requested was, that plaintiff should buy and hold the stocks. That it was not doing that sort of business is a good excuse for declining the request, but it is no ground for holding defendant accountable for the loss of money by irresponsible third parties, to whom he had never requested it to be paid, and who were not his agents for any purpose.